## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VALERIE A. WAITE,                        )
        Plaintiff,                       )
                                         )
v.                                       )        CIVIL ACTION NO. 3:05-448
                                         )
MICHAEL J. ASTRUE,                       )        JUDGE KIM R. GIBSON
COMMISSIONER OF SOCIAL                   )
SECURITY,                                )
        Defendant.                       )

## MEMORANDUM OPINION AND ORDER OF COURT

**Gibson, J.**

### I. INTRODUCTION

This matter comes before the Court on the Parties' cross-motions for summary judgment and

briefs in support thereof. Document Nos. 17-20. This Court has jurisdiction pursuant to 42 U.S.C. §

1383(c)(3), which incorporates the standards applicable under 42 U.S.C. § 405(g). For the reasons that

follow, the Court will deny Plaintiff's Motion for Summary Judgment (Document No. 17) and grant

the Defendant's Motion for Summary Judgment (Document No. 19).

Valerie A. Waite (hereinafter "Waite" or "Plaintiff") protectively filed for Supplemental

Security Income benefits (hereinafter "SSIB") under Title XVI of the Social Security Act on July 7,

2003, alleging disability as of November 1, 2002, due to mental impairments. Certified Transcript,

Document No. 7-2, pp. 25, 29, 40. The claim was initially denied on November 18, 2003, prompting

Plaintiff to file a timely request for a hearing on December 16, 2003. *Id.* at 4. A hearing was held in

Altoona, Pennsylvania, on January 4, 2005, before Administrative Law Judge Raymond J. Zadzilko

(hereinafter "the ALJ"). Document No. 7-1, p. 20. Waite, who was represented by counsel, appeared and testified at the hearing. *Id.* at 25-43. Ms. Irene Montgomery (hereinafter "Montgomery"), an impartial vocational expert, was also present for the entire hearing and testified before its conclusion. *Id.* at 43-47.

On June 23, 2005, the ALJ issued a decision which was unfavorable to Waite. *Id.* at 12-18. The Appeals Council denied Plaintiff's request for review on October 5, 2005, thereby making the ALJ's decision the final determination of the Commissioner of Social Security in this case. *Id.* at 5-7. Plaintiff the filed her Complaint in this matter on December 7, 2005. Document No. 3. Jo Anne Barnhart, Commissioner of Social Security (hereinafter "Barnhart"), filed an Answer on February 13, 2006. Document No. 8. Waite and Barnhart filed cross-motions for summary judgment on July 13, 2006, and August 14, 2006, respectively. Document Nos. 17 & 19. Since the commencement of this action, Michael J. Astrue (hereinafter "Astrue" or "the Commissioner") has succeeded Barnhart. Therefore, pursuant to FED. R. CIV. P. 25(d), the Parties have substituted Astrue as the Defendant in this matter.

## II. STANDARD

A District Court's review of the Commissioner's administrative determinations is limited to whether the record contains substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842, 853 (1971). Substantial evidence is more than just a scintilla of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citations omitted); *see also, Stewart v. Secretary*, 714 F.2d 287 (3d Cir. 1983). In discussing this

2

standard of review, the Third Circuit has stated:

> This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion. The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (citations omitted). *De novo* review of the facts

is prohibited and deference must be given the Commissioner's findings unless there is an absence of

substantial evidence to support such findings in the record. 42 U.S.C. § 405(g); *Monsour Med. Ctr. v.*

*Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986).

When resolving the issue of whether a claimant is disabled and therefore entitled to Disability

Insurance Benefits (hereinafter "DIB") or SSIB, the Social Security Administration (hereinafter "SSA")

uses a five-step sequential evaluation process. The United States Supreme Court recently summarized

this five-step process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not

3

to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80, 157 L. Ed. 2d 333, 339-40 (2003)

(footnotes omitted).

## III. ANALYSIS

### A. The ALJ's Conclusions

In his decision, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Document No. 7-1, p. 17. At the second step of the sequential evaluation process, the ALJ found the Plaintiff to be suffering from a recurrent major depressive disorder, dysthymia, a history of alcohol abuse and an anxiety disorder. *Id.* at 13. Although the ALJ did not consider Waite's anxiety disorder severe, he found the remaining impairments were of sufficient severity to satisfy the threshold of 20 C.F.R. §§ 416.920(a)(4)(ii) and 416.920(c). *Id.* Nevertheless, the ALJ concluded that the Plaintiff's impairments did not meet or medically equal an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* In accordance with 20 C.F.R. § 416.945, the ALJ made the following finding with respect to the Plaintiff's residual functional capacity:

The claimant's residual functional capacity for the full range of heavy work is reduced by nonexertional limitations including a prohibition from having any interaction with the public. She is to have no more than occasional contact with co-workers and supervisors and she cannot engage in any teamwork-type jobs. She is also limited to simple routine work without any deadlines or fast-paced production.

*Id.* at 17. Moving on to the fourth step of the process, the ALJ determined that the Plaintiff could not return to any of her past relevant work, which involved busing plates and working as a laborer. *Id.* at

4

16.

At the time of the ALJ's decision, the Plaintiff was twenty-seven years old, qualifying her as a younger individual, pursuant to 20 C.F.R. § 416.963(c). *Id.* at 17. She had an eighth grade education and was literate in the English language. *Id.* Based on the applicable residual functional capacity and vocational assessments, the ALJ concluded that Plaintiff could work as a laundry worker, washer, recycling worker or third shift custodian. *Id.* Ms. Montgomery's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B). *Id.* at 43-46.

## B.    Substantial Evidence Supports the ALJ's Conclusions

In support of her Motion for Summary Judgment, Waite contends that the ALJ wrongfully disregarded her testimony at the hearing, particularly with respect to the degree of limitation caused by her impairments. Document No. 18, pp. 4-5. At the hearing, the Plaintiff testified that she had attempted to get her GED on three occasions, but was unable to do so because of panic attacks. Document No. 7-1, p. 26. She also testified that she was able to read newspapers and watch television with her son. *Id.* at 27. Plaintiff's arguments are centered on the principle that, in order to be statutorily disabled, a claimant need not "vegetate in a dark room excluded from all forms of human and social activity." Document No. 8, p. 4.

Though this may be, arguments that sporadic and transitory activities do not negate a finding of disability fail to explain why Waite is statutorily disabled. It is clear that competent medical evidence establishing the existence of a disabling impairment or combination of impairments cannot be discounted solely on the basis of a claimant's ability to engage in a limited amount of daily activities. *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988) ("What we are left with is a rejection of

5

medically credited symptomatology based solely on the administrative law judge's observation of the claimant at the hearing, and claimant's testimony that he took care of his personal needs, performed limited household chores, and occasionally went to church. That is not permissible."); *Swope v. Barnhart*, 436 F.3d 1023, 1026 (8th Cir. 2006) ("In numerous cases we have noted that the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." (quotation omitted)). In the matter *sub judice*, however, the record is devoid of medical evidence supporting an assertion that the Plaintiff is statutorily disabled.

In *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993), the United States Court of Appeals for the Third Circuit explained that "[a]n ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." In the instant case, Plaintiff does not appear to allege that she suffers from disabling pain, but rather that her nonexertional impairments (the existence of which are uncontested) result in a degree of limitation sufficient to constitute a statutory disability. Document No. 18, p. 4. It must be remembered that there is "a distinction between the issue of the existence of a medical condition and the issue of the existence of statutory disability." *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237 (3d Cir. 1983). While the evidence of record clearly establishes the presence of mental impairments, the ALJ's conclusion that these impairments are not disabling is "supported by substantial evidence" for purposes of 42 U.S.C. § 405(g).

Aside from her own testimony, the Plaintiff does not concentrate her argument on the medical evidence contained in the record. Document No. 18, pp. 2-6. Nevertheless, a close examination of the

6

record reveals that the ALJ's determination is amply supported by the evidence. First of all, the ALJ's determination that the Plaintiff suffers from no exertional impairments is supported by the Plaintiff's own testimony. Document No. 7-1, p. 34. When questioned by her attorney, she indicated that she did not have any physical impairments (i.e., exertional impairments) that would affect her ability to work. *Id.* Consequently, it is clear that the ALJ's conclusion that she was capable of performing heavy work is supported by substantial evidence.[1] *Id.* at 17.

The ALJ relied on competent medical evidence in determining that the Plaintiff's nonexertional impairments were not disabling. Her treating psychiatrist, Dr. Quentin Dolphin, opined that she was temporarily disabled from January 24, 2005, through October 24, 2005. Document No. 7-4, p. 16. A "disability" lasting only nine months is facially insufficient to satisfy the durational requirement of 42 U.S.C. § 1382c(a)(3)(A), which states that a claimant is disabled only if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." It is not sufficient for Waite to show that her *impairment* lasted, or was expected to last, for the requisite period of time. Instead, she must show that her *inability to engage in substantial gainful activity* lasted, or was expected to last, for the twelve-month period of time. *Barnhart v. Walton*, 535 U.S. 212, 217-25, 122 S. Ct. 1265, 1269-74, 152 L. Ed. 2d 330, 338-43 (2002). Even if Dr. Dolphin had indicated that the Plaintiff's "disability" was expected to last for more than a year, it is axiomatic that "a statement by a plaintiff's treating physician supporting an assertion

---

[1] According to 20 C.F.R. § 416.967(d), "[h]eavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work."

7

that she is 'disabled' or 'unable to work' is not dispositive of the issue." *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994). The ultimate question of whether a claimant is disabled is reserved to the Commissioner. 20 C.F.R. § 416.927(e).

Aside from Dr. Dolphin's conclusory opinion, the record does not contain evidence of a disabling impairment. On November 7, 2003, a state agency physician evaluated the Plaintiff's medical records.[2] The physician indicated that the Plaintiff's impairments caused mild restrictions in her activities of daily living, moderate difficulties in her maintenance of social functioning, and moderate difficulties in her maintenance of concentration, persistence or pace. Document No. 7-3, p. 39. It was noted that the Plaintiff had experienced no episodes of decompensation of extended duration. *Id.* The Plaintiff's allegations were deemed to be "partially credible," but her impairments were not viewed as significantly limiting with respect to her ability to perform job-related tasks. *Id.* at 41. The physician believed that the Plaintiff was "capable of performing simple, routine tasks." *Id.* at 45.

On April 29, 2005, the Plaintiff underwent a consultative examination, which was performed by Dr. Edwin Tan. Dr. Tan opined that the Plaintiff was slightly limited in her ability to understand, remember and carry out short, simple instructions and moderately limited in her ability to understand, remember and carry out detailed instructions. Document No. 7-4, p. 22. Only moderate limitations were found with respect to the Plaintiff's ability to make simple, work-related decisions. *Id.* Although Dr. Tan found the Plaintiff to be markedly limited in her ability to interact appropriately with the public, only moderate limitations were found in the Plaintiff's ability to interact appropriately with supervisors

---

[2] The name of the state agency physician is illegible. Document No. 7-3, pp. 29, 45.

8

and co-workers, and in her ability to respond appropriately to typical work pressures and changes. *Id.*

The ALJ did not determine the Plaintiff's residual functional capacity in a vacuum. Dr. Tan apparently believed that the Plaintiff's impairments severely limited her ability to interact with the general public. *Id.* Consequently, the ALJ incorporated this limitation into his residual functional capacity assessment. "Residual functional capacity is defined as that which an individual is still able to do despite the *limitations* caused by his or her *impairments*." *Pearson v. Barnhart*, 380 F. Supp. 2d 496, 505 (D.N.J. 2005) (emphasis added). There is no question that the Plaintiff suffers from nonexertional impairments. The ALJ, however, did not find the degree of limitation to be as severe as that reflected in the Plaintiff's testimony. The Plaintiff fails to explain why she believes that the ALJ erred in determining her residual functional capacity. Document No. 18, pp. 2-6.

At the fifth step of the sequential evaluation process, the burden is on the Commissioner, rather than the claimant. *Allen v. Barnhart*, 417 F.3d 396, 401 n.2 (3d Cir. 2005); *Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000). In this case, the Commissioner satisfied that burden with Montgomery's testimony that Plaintiff's residual functional capacity and vocational assessments were consistent with laundry laborer, washer, recycling and third shift custodian positions existing in the national economy. Document No. 7-1, p. 45. Since the ALJ's hypothetical question to Montgomery included all of Waite's credibly established limitations, Montgomery's testimony constituted "substantial evidence" upon which the ALJ was able to base his ultimate determination of non-disability. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

Plaintiff does not base her argument on the precise nature of her limitations. Instead, she generalizes about how her mental impairments prevented her from finishing school or securing a GED.

9

Document No. 18, p. 4. The jobs identified by Ms. Montgomery, however, do not require a GED. Waite's inability to advance academically has nothing to do with her ability to perform work which does not require an academic background. While Plaintiff's educational background undoubtedly affects her vocational assessment by diminishing the pool of jobs for which she would qualify, it does not place her in the "disabled" category unless the jobs which she can perform do not "exist[] in the national economy" for purposes of 42 U.S.C. § 1382c(a)(3)(B). Montgomery's testimony established the availability of jobs consistent with Plaintiff's residual functional capacity and vocational assessments, and Waite's arguments to the contrary are unavailing.

Plaintiff refers to the Social Security Act as "a remedial statute, to be broadly construed and liberally applied," requiring that doubts be "liberally construed" in favor of the claimant. Document No. 18, p. 5. In support of this assertion, she relies on the case of *Helvering v. Davis*, 301 U.S. 619, 57 S. Ct. 904, 81 L. Ed. 1307 (1937), wherein the Supreme Court rejected a constitutional challenge to the Social Security Act and held that the Act was a valid exercise of Congress' authority under the Spending Clause. *Helvering*, 301 U.S. at 645. The Court explained:

The conception of the spending power advocated by Hamilton and strongly reinforced by Story has prevailed over that of Madison, which has not been lacking in adherents. Yet difficulties are left when the power is conceded. The line must be drawn between one welfare and another, between particular and general. Where this shall be placed cannot be known through a formula in advance of the event. There is a middle ground or certainly a penumbra in which discretion is at large. The discretion, however, is not confided to the courts. The discretion belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment.

*Id.* at 640. The language that was *liberally construed* in *Helvering* was contained in the Constitution, not the Social Security Act. *Helvering* construed the Spending Clause to provide Congress with a broad

10

degree of discretion to tax and spend for the "general Welfare of the United States[.]" U.S. CONST., art. I, § 8. Nothing in that precedent is relevant to the inquiry in the present case, which centers on the question of whether the Plaintiff "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In recent times, the Supreme Court has noted that administrative proceedings under the Social Security Act "are inquisitorial rather than adversarial," and that procedural standards applicable in court proceedings (such as issue-exhaustion requirements) do not necessarily apply to the same extent in non-adversarial administrative proceedings. *Sims v. Apfel*, 530 U.S. 103, 110-11, 120 S. Ct. 2080, 2085, 147 L. Ed.2d 80, 87-88 (2000) (plurality opinion). The Act's substantive disability standard, however, is a demanding one, and nothing in the governing law indicates the contrary. The Plaintiff's reliance on *Helvering* is misplaced.

## IV. CONCLUSION

This Court's review is limited. Congress has clearly mandated that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). So long as the Commissioner's findings are supported by substantial evidence, this Court cannot set those findings aside even if it would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Since the ALJ's decision in this case is supported by substantial evidence, this Court has no authority to disturb it. Accordingly, the Court must deny the Motion for Summary Judgment filed by the Plaintiff

11

(Document No. 17) and grant the Motion for Summary Judgment filed by the Commissioner (Document No. 19). An appropriate order follows.

**AND NOW**, this 1st day of June, 2007, this matter coming before the Court on the Parties' cross-motions for summary judgment, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Document No. 17) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Document No. 19) is **GRANTED**. Accordingly, the Clerk of Court shall enter judgment in favor of Defendant and against Plaintiff Valerie A. Waite and shall mark this case closed.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

Cc:    **All counsel of record**